# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN ROBERT GUITH,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,[1]<br><br>Defendant. | **1:16-cv-00625 GSA**<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF KEVIN ROBERT GUITH** |

**I.      INTRODUCTION**

Plaintiff, Kevin Robert Guith ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. The matter

---

[1] Pursuant to Fed. R. Civ. Pro. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A. Berryhill is now the acting Commissioner of Social Security.

1

is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] (*See,* Docs. 18, 23 and 24). Upon a review of the entire record, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, the Court AFFIRMS the agency's disability determination and DENIES Plaintiff's appeal.

## II. FACTS AND PRIOR PROCEEDINGS[3]

### A. Background

Plaintiff filed an application for DIB alleging he was disabled as of July 22, 2006, due to herniated discs in his cervical spine, neck and back pain, and migraines.[4] AR 375; 462; 483. The parties agree that the Plaintiff properly exhausted his administrative remedies and that the Appeals Council denied Plaintiff's appeal. (Doc. 21, pg. 2 and Doc. 23, pg. 2). Therefore, this appeal is a review of Administrative Law Judge Serena Hong's ("ALJ") decision issued on September 18, 2014, which is considered the Commissioner's final order. *See*, 42 U.S.C. §§ 405(g), 1383(c)(3). AR 22-36.

### B. Summary of the Medical Record

The Court has reviewed the entire medical record. Relevant portions of the record will be referenced in the discussion where appropriate. AR 584-853.

## III. THE DISABILITY STANDARD

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which

---

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 8 and 12).

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[4] Plaintiff also filed an application for Supplemental Security Income (SSI) under Title XVI, which the agency denied on October 8, 2009, because his resources were over the allowable amount (AR 163-70, 382-87). Plaintiff did not appeal his SSI application and it is not before the Court. (Doc. 18, pg. 3).

2

exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.
42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1520(a). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 404.1513.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments; (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work[5]; and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)(4).

## IV.     **SUMMARY OF THE ALJ'S DECISION**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff met the insured status requirements through December 31, 2011. AR 24. She noted that Plaintiff had not engaged in substantial gainful activity from his alleged date of onset of July 22, 2006, through his last insured date of December 31, 2011. AR 24. At step two, the ALJ identified depression, obsessive compulsive disorder, degenerative disc disease, and migraine headaches, as severe impairments. AR 24. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listing impairments in 20 C.F.R. Part 404 P, Appendix 1. AR 25-26. However, the ALJ also determined that Plaintiff had the residual functional capacity ("RFC") to: lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand, and walk in one hour increments for a total of six hours in an eight-hour workday; occasionally climb, balance, stoop,

---

[5] Residual functional capacity captures what a claimant "can still do despite [his] limitations." 20 CFR § 404.1545. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

3

kneel, crouch, and crawl; occasionally perform overhead activity; frequently use foot controls; avoid concentrated exposure to hazards, humidity, dampness, temperature extremes, and vibration; and that he could perform simple, repetitive tasks. AR 27-34. In reaching this conclusion, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. AR 25-34.

Given the above, at step four, the ALJ found Plaintiff could not perform his past relevant work as a pharmaceutical sales representative or a nurse. AR 34. Alternatively, at step five, the ALJ considered the testimony of a vocational expert and concluded that other jobs existed in significant numbers in the national economy that Plaintiff could perform including an assembler, a packager, and a garment folder. AR 35. The ALJ therefore concluded Plaintiff was not disabled. AR 35-36.

## V.     THE ISSUES PRESENTED

Plaintiff argues that the ALJ improperly considered the opinion of Dr. Portnoff, Ph.D., who performed a consultative psychological examination on March 17, 2012. Specifically, he contends that the ALJ did not incorporate Dr. Portnoff's opinion that Plaintiff was moderately limited in his ability to interact with supervisors into the RFC. Plaintiff also argues that the ALJ erred at step five. In particular, he asserts that the ALJ did not address a conflict between the limitation in the RFC that Plaintiff was only able to occasionally perform overhead activities and the VE's testimony that Plaintiff could perform all of the jobs the VE identified. He contends that the Dictionary of Occupational Titles ("DOT") and related publications mandate that these jobs require either frequent or constant reaching. Finally, Plaintiff argues that the ALJ improperly ignored the lay testimony of David Guith, Plaintiff's father. He requests that the case be remanded for a payment of benefits, or alternatively, that the case be remanded for further consideration of these issues. (Doc. 18, pgs. 10-23; Doc. 24, pgs. 3-6).

In reply, the Commissioner argues that the ALJ's RFC which limited Plaintiff to simple repetitive tasks properly accounted for Dr. Portnoff's limitations. Additionally, she contends that substantial evidence supports the ALJ's findings at step five because nothing in a plain reading of the DOT suggests that the required reaching would be overhead, and the VE testified that none of the proposed jobs required overhead reaching. Finally, she asserts that the ALJ's failure to address the testimony of Plaintiff's father was harmless error because the ALJ's reasons for

4

rejecting Plaintiff's testimony apply equally to his father's similar allegations. (Doc. 23, pgs. 13-25).  As such, the ALJ's decision should be affirmed.

## VI. THE STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence, and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*  Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## VII. DISCUSSION
### A. The ALJ Properly Considered Dr. Portnoff's Opinion and the RFC Incorporated the Limitations that the ALJ Found Were Supported by Substantial Evidence.

On March 17, 2012, Lance A. Portnoff, Ph.D., a state agency doctor completed a comprehensive psychological evaluation. AR 687-698. Plaintiff reported that his pain was constant and he only got four hours of sleep per night. AR 687. He also stated that he had become depressed, felt hopeless and worthless, had passive suicidal ideas, and heard his name called. AR 687. Plaintiff denied having any psychiatric hospitalizations or counseling. AR 688. He reported that he had problems with dressing and bathing due to apathy; he was unable to cook, but could grab items from the refrigerator; he could not bend or reach, which limited his ability to clean; and he could manage his own money. AR 688. Plaintiff said his typical day was staying at home, sitting and resting, and watching television. AR 688.

Plaintiff was casually-dressed and groomed, he had moderate-to-marked psychomotor discomfort, mildly reduced facial kinetics, and good eye contact. AR 689. He demonstrated adequate concentration, persistence, and pace. AR 688. Plaintiff's speech was quiet and flattened, but prompt and spontaneous; his thought process was mildly rambling, but coherent; and his thought content was appropriate. AR 689. Plaintiff denied hallucinations or suicidal ideation. AR 689. His affect was characterized by mild-to-moderate tense depression. AR 689. Plaintiff's

immediate recall was intact - he recalled 2/3 words after several minutes, he was able to remember autobiographical information, and could perform simple calculations. AR 689.

Intelligence and memory testing indicated generalized impairment in visual reasoning, working memory, processing speed, visualmotor control/retention, and immediate/delayed verbal/visual memory. AR 690-694. Dr. Portnoff diagnosed major depressive disorder and moderate obsessive-compulsive disorder and assigned a global assessment of functioning score of 57, indicating moderate symptoms.[6] AR 694.

Dr. Portnoff concluded that Plaintiff was able to perform simple and repetitive tasks, and that he had mild limitations in his ability to interact with co-workers and the public; work without special or additional instruction; and maintain regular attendance. He had moderate limitations in his ability to perform detailed and complex tasks; accept instructions from supervisors; complete a normal workday or workweek without interruptions from a psychiatric condition; and deal with stress. AR 694-695. The form accompanying Dr. Portnoff's opinion defined the term "moderate" as more than slight, but that "the individual is still able to function satisfactorily" in that area. AR 696.

The ALJ gave partial weight to Dr. Portnoff's opinion. AR 25-26. In doing so, the ALJ specifically referenced Plaintiff's moderate limitations in his ability to accept instructions from supervisors. AR 25-26; 31. She noted that the examination was performed after the Plaintiff's last insured date so the doctor's finding had limited relevance to Plaintiff's disability period. Relatedly, she noted that Plaintiff did not allege any problems with social functioning or mental limitations when he applied for benefits, or when he filed for reconsideration, nor did the person interviewing him observe any problems. AR 25-26; 31. Similarly, there was no mention of social functioning problems in the treatment file. AR 26. She further found that Dr. Portnoff's opinion was based on Plaintiff's subjective complaints. As a result, the ALJ concluded that Plaintiff only had mild limitations in social functioning, if any, prior to last insured date. AR 26.

Plaintiff contends that rejection of Plaintiff's moderate limitation in his ability to accept

---

[6] A GAF score represents a rating of overall psychological functioning on a scale of 0 to 100. *See*, *Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Disorders*, Text Revision 34 (4th ed. 2000). A GAF score in the range of 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers)." Id. The American Psychiatric Association has since omitted GAF scores from its multiaxial diagnostic system.

instructions from supervisors was improper because the evaluation was completed approximately three months after Plaintiff's last date of insured, and the ALJ relied on the opinion of Dr. Van Kirk, an orthopedic examiner whose opinion was dated ten days after Dr. Portnoff's opinion was rendered. Therefore, Plaintiff argues that rejection of Dr. Portnoff's reports due to timing is internally inconsistent with the ALJ's reliance on other medical evidence in the file when evaluating Plaintiff's physical impairments. Further, he argues that since Dr. Portnoff completed objective psychological testing, the ALJ's assertion that his opinion was based on Plaintiff's subjective complaints is not accurate.

As a preliminary matter, the Court is not convinced that the ALJ rejected Dr. Portnoff's limitation with regard to social functioning. As Defendant has pointed out, the supplemental sheet to Dr. Portnoff's assessment indicates that he was defining the term "moderate" as more than slight, but that "the individual is still able to function satisfactorily" in that area. AR 696. Notably, although Dr. Portnoff indicated that Plaintiff had moderate limitations in several areas, he still opined that Plaintiff had the ability to perform simple repetitive tasks, which the ALJ incorporated into the RFC. A RFC captures what a claimant "can still do despite [his] limitations." 20 CFR § 404.1545. Given the doctor's definition of moderate in this case, and since the only limitation he identified was limiting Plaintiff to simple repetitive tasks, the ALJ's formulation of the RFC was not inconsistent with Dr. Portnoff's opinion.

Additionally, even assuming that the ALJ's interpretation of this moderate limitation was incorrect, the Court finds that the reasons for rejecting this limitation were sufficient. An ALJ may reject the uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Ghanim v. Colvin*, 763 F. 3d 1154, 1161 (9th Cir. 2014); *Lester*, 81 F.3d 821, 831 (9th Cir. 1995). In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Ghanim*, 763 F. 3d at 1161; *Lester v. Chater*, 81 F.3d at 830. Here, the ALJ correctly noted that there was no mention of social functioning limitations in Plaintiff's disability application, his requests for reconsideration, or the medical record prior to his date of last insured. AR 375; 462; 469-471; 482-487; 502-506; 598-611; 613-616; 728-754; 762-796. Therefore, it was reasonable for the ALJ to find that Dr. Portnoff's opinion had limited relevance to the applicable time period. The Court is not persuaded by Plaintiff's argument that the ALJ's reliance on this factor was improper because she

7

gave weight to Dr. Van Kirk's orthopedic evaluation, which was completed after Dr. Portnoff's assessment. The crux of Plaintiff's disability application was based on his physical ailments - specifically his degenerative disc disease, pain in his neck and back, and migraines. AR 375; 462; 483. The record is replete with treatment he received for these ailments which is not the case with regard to his social impairments prior to his last insured date. AR 598-616; 728-754; 762-796. Therefore, the ALJ's rejection of Dr. Portnoff's opinion concerning Plaintiff's social limitation is both a specific and legitimate, as well as a clear and convincing reason to reject the doctor's findings.  Since the ALJ's reasoning is rational and is supported by the record, the Court must defer to this interpretation as the ALJ is responsible for resolving conflicts and weighing the medical evidence. *See Gutierrez v. Comm'r of Soc. Sec*., 740 F.3d 519, 523 (9th Cir. 2014) ("The court must consider the record as a whole and weigh 'both the evidence that supports and the evidence that detracts from the ALJ's' factual conclusions" and "'[i]f the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner"); *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005); (Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.); *Thomas*, 278 F.3d at 954 (same).

      Notwithstanding the above, the Court is not persuaded by the ALJ's other reason for rejecting the opinion, which was that Dr. Portnoff's findings were unreliable because they were based on Plaintiff's subjective complaints. It is clear that Dr. Portnoff's assessment was based on objective data since he administered psychological testing. However, this error is harmless in light of the other reasons the ALJ provided. *Carmickle v. Comm'r of Social Security*, 533 F.3d at 1162 (An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (same); *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 885 (9th Cir.2006) (same); *Stout v. Comm'r of Social Security*, 454 F.3d 1050, 1055 (9th Cir. 2006) (same). Given the above, the ALJ's evaluation of the medical evidence and formulation of the RFC, including the omission of Plaintiff's moderate limitation of  taking directions from supervisors, is based on the correct legal standards and is supported by substantial evidence.

///

///

## B. The ALJ's Analysis at Step Five was Proper.

Plaintiff also argues that the ALJ erred at step five. Specifically, he contends that the ALJ did not address a conflict between the limitation in the RFC that Plaintiff was only able to occasionally perform overhead activities and the VE's testimony that Plaintiff could perform work as an assembler, a garment folder, and a packager. Plaintiff assets that since all of the jobs require either frequent or constant reaching, the ALJ was obligated to address the conflict with the VE. (Doc. 18, pgs. 15-17). The Commissioner contends that this argument is without merit because the VE clarified that these jobs only require reaching in front of you, and because any conflict was not so apparent that would warrant further attention by the ALJ.[7] (Doc. 23, pgs. 16-21). The Court agrees with the Commissioner.

If Plaintiff establishes that he is unable to perform his past work at step four, the burden shifts to the Commissioner at step five "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *See also* 20 C.F.R. §§ 404.1560(g). At step five, the ALJ may rely on the DOT and testimony from a VE to assess a claimant's ability to perform certain jobs in light of his residual functional capacity. 20 C.F.R. §§ 404.1566(e); 404.1569; 404.1566(d); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). As part of this process, occupational information provided by a VE should generally be consistent with the DOT. SSR 00-04, 2000 WL 1898704, at *2, (Dec. 4, 2000). Furthermore, the ALJ must resolve any apparent conflict between the VE's testimony and the DOT before relying on the VE's testimony in support of a disability determination. *Id*; *Zavalin v. Colvin*, 778 F. 3d 842, 846 (9th Cir. 2015); *Massachi v. Astrue*, 486 F. 3d 1149, 1153-1154 (9th Cir. 2007). When there is an apparent unresolved conflict between the VE and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled. *Massachi*, 486 F. 3d at 1153. Neither the DOT nor the VE testimony automatically "trumps" when there is a conflict. *Id*. The adjudicator must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information. *Id*.

---

[7] Notably, once the Commissioner cited to the VE's testimony in the opposition, Plaintiff did not file any response on this issue in his Reply.

9

However, not all potential conflicts between a vocational expert's job suitability recommendation and the DOT will be apparent or obvious. *Lamear v. Berryhill*, 2017 WL 3254930 *3 (9th Cir. Aug, 1, 2017); *Gutierrez v. Colvin*, 844 F. 3d 804, 808 (9th Cir. 2016). In order for a difference between a VE's testimony and the DOT's listings to be fairly characterized as a conflict, it must be obvious or apparent. *Lamear*, 2017 WL 3254930 at *3; *Gutierrez*, 844 F. 3d at 808. This means that the testimony must be at odds with the DOT's listing of job requirements that are essential, integral, or expected. *Lamear*, 2017 WL 3254930 at *3; *Gutierrez*, 844 F. 3d at 808. Where the job itself is a familiar one, less scrutiny by the ALJ is required. *Lamear*, 2017 WL 3254930 at *3; *Gutierrez*, 844 F. 3d at 808. Thus, an ALJ must ask follow up questions of a vocational expert only when the expert's testimony is either obviously or apparently contrary to the DOT. However, the obligation doesn't extend to unlikely situations or circumstances. *Lamear*, 2017 WL 3254930 at *3; *Gutierrez*, 844 F. 3d at 808. Thus, the requirement for an ALJ to ask follow-up questions to determine if an actual conflict exists is fact-dependent.

Here, the ALJ found that Plaintiff could perform a reduced range of light work, including only occasional overhead activity, and that he could sit, stand, or walk in one-hour increments for a total of six hours in an eight-hour workday. AR 25-34. The ALJ presented these limitations to the VE, who then identified three occupations that Plaintiff could perform including an assembler, DOT 706.684-022, 1991 WL 679050; a garment folder, DOT 789.687-066, 1991 WL 681266; and a packager, DOT 929.587-010, 1991 WL 688159 (emphasis added). AR 80-82. The VE confirmed that his testimony was consistent with the DOT, except for alternating positions, which was not covered in the DOT, and was based on the VE's experience observing jobs and how they were performed. AR 83.

At the hearing, Plaintiff's representative specifically cross-examined the VE and inquired whether an individual who was limited to reaching, handling, or fingering one foot in front of him or herself would be able to perform the jobs identified. AR 84. The VE testified that "reaching one foot would be appropriate for … the jobs I identified because . . . you're only doing them like on a table or a bench and so that would be appropriate . . . also the handling would be directly in front of you in those jobs." AR 84-85. Similarly, according to the DOT, an assembler's duties include, "[f]requently work[ing] at bench as member of assembly group assembling one or two

10

specific parts and passing unit to another worker" DOT 706.684-022, 1991 WL 679050; a garment folder's duties include "[f]old[ing] garments for bagging or boxing, following guide marks on table or using folding board" DOT 789.687-066, 1991 WL 681266; and packager duties include "[p]ush[ing] box or carton along bench or onto conveyor." [8] DOT 929.587-010, 1991 WL 688159. Thus, the duty descriptions contained in the DOT for these jobs are consistent with the VE's testimony.

Plaintiff contends that because these three occupations involve frequent reaching (or constant reaching in the case of the alternative packager occupation Plaintiff cites), the reaching must be in one direction and that direction is overhead. (Doc. 23, pgs.16-17). He relies on SSR 85-15 and the Revised Handbook for Analyzing Jobs ("RHAJ") for the premise that reaching includes extending hands and arms in any direction. However, the DOT and its accompanying materials, defines reaching in its broadest way possible. The role of a VE is to provide more specific information than the DOT publications about the requirements of a particular job as it is performed in a particular setting. *Breitmeyer v. Colvin*, 2015 WL 2260603, at *5-6 (D. Or. May 12, 2015) (unpub.) (citing SSR 00-4p). That is what happened here. The VE gave affirmative testimony on cross-examination that an individual limited to occasional overhead activity would be able to perform these jobs. AR 84-85. Given these facts, it was not obvious or apparent that a conflict existed between the VE's testimony and the DOT such that the ALJ would be required to elicit additional testimony from the VE. Therefore, the ALJ did not err at step five. AR 34-35.

### C. The ALJ's Failure to Address David Guith's Testimony was Harmless Error.

Plaintiff contends the ALJ failed because she did not properly evaluate the testimony of David Guith, Plaintiff's father. Specifically, Plaintiff argues that the ALJ did not provide specific, germane reasons for rejecting the testimony, and in fact, did not consider it at all in the decision.

---

[8] Plaintiff asserts that the ALJ incorrectly listed the DOT code for the packager occupation as 929.587-01, and that it should have been 920.587-018, 1991 WL 687916. (Doc. 18, pg. 15). The code the VE identified and the ALJ cited pertains to a subset of occupations within the packaging and materials handling occupations, which the DOT describes as a nut and bolt assembler. AR 35, 80-82. *See,* DOT code 929.587-010, 1991 WL 688159. This occupation is light exertion and, according to the duty description in the DOT, also entails working along a bench, as the VE testified. AR 80-82, 84-85. Thus, it appears that the DOT code the VE and the ALJ indicated was correct. Whether the correct code is 929.587-010 or 920.587-018, as Plaintiff contends, does not affect the outcome here since both jobs were light exertion packaging occupations. Moreover, even excluding the packager job, two other jobs exist at step five to meet the Commissioner's burden.

11

He argues this constitutes reversible error. (Doc. 18, pgs. 18-23; Doc. 24, pgs. 4-6). Defendant asserts that while the ALJ did not specifically address the third party statements, her error was harmless. (Doc. 21-25.)

Lay witness testimony as to a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence which the Commissioner must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ may reject such testimony if he does so expressly, in which case "he must give reasons that are germane to each witness." *Dodrill*, 12 F. 3 at 919. "If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

The lay witness statement at issue is a statement written by Plaintiff's father on August 11, 2012. AR 523-525. In the statement, Plaintiff's father reported that Plaintiff suffers from migraine headaches which last more than a day. [9] When Plaintiff has a migraine he stays in his room except to use the restroom, or to get an ice pack for his head and eyes. AR 523. Mr. Guith also reported that Plaintiff typically sits in a recliner when he is up, he remains in a seated position for thirty-five minutes before moving, then he walks around for ten minutes. He repeats the cycle for about four hours, then lies down for two to four hours. Plaintiff only leaves the house four times a month to go to appointments. He can drive to appointments, but needs to lay down before and after. AR 523.

With regard to daily activities, Mr. Guith reported that Plaintiff would try do to dishes in the past, but would never finish because he would have to rest for hours after. Additionally, he has had to help Plaintiff get in the tub to bathe and helps him into bed. AR 524. Mr. Guith reported that Plaintiff seemed depressed and that he used to be outgoing, but now he primarily keeps to himself and no longer participates in social activities. AR 525.

Here, the Commissioner concedes that ALJ did not specifically address this statement in the opinion, but that the error was harmless. The Court agrees. Although the statement is not specifically referenced in the decision, the ALJ advised Plaintiff and his father that she would

---

[9] He also reported he has to put blinds on the inside and outside of Plaintiff's window, along with a blackout curtain to provide silence and darkness to allow Plaintiff to rest.

12

consider the evidence. AR 53. (ALJ noting that the statement was in the record at Exhibit 16E and that she would consider the statement when making the decision). Moreover, she indicated several times in the opinion that she had considered the entire record when making her disability determination. AR 23; 24; 26. Finally, a review of this statement reveals its does not describe any limitations beyond that which Plaintiff described. More particularly, the statement references Plaintiff's daily struggle with back and neck pain; his problems sitting, standing, and walking; his migraines; his depression; and his ability to do daily activities. Plaintiff testified to all these symptoms and conditions himself and the ALJ rejected Plaintiff's testimony because she found he was not credible. AR 32-34; 60-78. As explained in *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012):

> Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se.
> *Id*. at 1117.

When rejecting Plaintiff's testimony, the ALJ noted his physical symptoms were not consistent with the objective medical evidence in the file; Plaintiff gave inconsistent testimony to doctors regarding the extent of his ability to perform daily activities; he stopped working initially to care for his ailing mother; and he did not receive treatment for his mental health condition. AR 33-34. Plaintiff has not contested the ALJ's credibility determination and therefore, he has waived that argument. See *Carmickle v. Commissioner*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (issue not argued with specificity will not be addressed); *see also Paladin Associates., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (ordinarily the Court will not consider matters on appeal that are not specifically and distinctly argued); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

Because the ALJ discussed Plaintiff's testimony at length and rejected his testimony regarding the extent of his limitations, the same reasons apply equally to Mr. Guith's statement. Thus, any error in not expressly rejecting Mr. Guith's witness statement is harmless. *Molina v. Astrue*, 674 F.3d at 1121.

13

## VIII. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is based on the correct legal standards. Accordingly, this Court DENIES Plaintiff's appeal. The Clerk of this Court is DIRECTED to enter judgment in favor of Nancy A. Berryhill, Commissioner of Social Security and against Kevin Robert Guith, and to close this action.

IT IS SO ORDERED.

Dated: **September 12, 2017**         **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE